We'll now hear the cases of United States v. Goldtooth and Totsie. Do you have a time allocation? Yes, Your Honor. Mr. Jim Park here on behalf of Mr. Totsie. Mr. Mitchell and I will split the time. We'd like to reserve a combined three minutes rebuttal. Very good. Thank you. You may proceed. Thank you. May it please the Court, my name is Jim Park. I'm here for Phoenix on behalf of my client, Myron Totsie, who is currently serving a 78-month sentence imposed in this case, and he'll be spending his 40th year in incarceration as a result of the conviction in this case. The 78-month sentence basically essentially comes down to for taking a proximate value of $3 to $4 in tobacco products from two victims who are, count one, would have been Mr. Crawford, and count two would have been Sheldon Davis or Mr. Davis, two young individuals. On the night of July 31st, early hours, these two individuals were sitting outside a Conoco gas station at a curb rolling up hand-rolled cigarettes after they had combined their money together and purchased tobacco products. At this point, they appeared to have no money on neither of the victims, Mr. Crawford, nor Mr. Davis had any money on them at that point. What exactly is the pertinence? Well, your client was not convicted for the money or wallet, right? That is correct, Judge. Oh, so I should have waited for the other one. Okay. In count one, there's no dispute. That involved the count one involved Mr. Crawford, who had the tobacco product, and government did prove the case. And, you know, it's based on the evidence that was presented to the jury at that time. We don't really – from a legal standard, we don't really have that. Do we know – I mean, somebody took the tobacco, right? Correct. That's the count one. And aside from the ones that were rolled, somebody took the tobacco? Yes. So is the problem we don't know who took it, or is the problem that that wasn't a robbery, or what's the problem? No, we don't have any dispute with that, Judge. That's count one. Okay. What we have a dispute is with count two. In count two, there was – nothing was taken in count two. The victim in that case, Sheldon Davis, did not have anything. According to his testimony, he had a wallet in his back pocket, but he had no – he does not recall having any money. Explain to me exactly what difference that makes, in the sense that nobody ever said, give me your money or your wallet or anything else. They never said, give me anything. They never – I believe the question was asked, is there anything? What do you have in your pockets? Yes. Do you have anything in your pocket? Right. But they didn't say, give it to me. There was nothing asked of them to be given. It's correct. Right. They – So what's the – suppose they – if they had said, give me your wallet, what difference – would it have made any difference if they thought there was money in the wallet, but there wasn't any? I don't think it would have made a difference if he said, give me your wallet. Give me your money, and they give him the wallet, but there's no money in the wallet. Does that make a difference, in terms of whether they were attempting to rob the money? I think the way it would make a difference, depending on how it's charged, I guess, would be the answer. If the – Well, but we have all these – I mean, the reason I'm asking these questions is because we have these cases where people – where there are these sting operations, right, where the police convince somebody that they're going to go and rob a whole bunch of money – of drugs from somewhere, but there are no drugs. In fact, there's no somewhere. And somehow we say, well, as long as you have the intent to rob it, it doesn't matter whether it really exists. I mean, I have some problems with that, but that seems to be the case law. So what's the difference if there was money? It seems to me the problem here is that there may not have been any robbery, but was there – what's the difference if there was money? Well, I think the – in those entrapment cases that you're talking about, the sting operations, I think – But they're not entrapment. They're determined not to be entrapment.  You're correct. However, I think they're determined to be – they're usually charged as conspiracy. So as long as there's an intent, the object is there, I think they don't have to actually prove in the case law states whether – And you wouldn't have the same for attempt? We don't have the same issue because this would be a – this is not charged as conspiracy. But it's charged as an attempt. It is charged – the way the statute is written, it's both taking and a completed offense. You can commit it either way. I think it's clear that this statute is constructed in disjointive so that – in a disjunctive, I should say, that it's either take or attempt to take. So the way the statute is written and the way the government charged it, they charged as a conjunctive, which I understand that they're allowed to do that. I mean, there's clearly case law that says they can charge statutes in conjunctive but prove in the disjunctive. Well, that's clearly an attempt because they didn't take anything. They didn't take anything. I mean, it's just a debacle, but that's off the table. Okay. Correct, Judge. And what had happened came down to if no one – I mean, Mr. Davis did not have any money. I mean, it's pretty clear there was no evidence to present that he had any money. Whatever money he had earlier, they had already spent it because they had to put it together to buy this $3 to $4 worth of tobacco between themselves to buy it. So there was really – at this point, there's no evidence that the government produced that there was money that Mr. Davis had. Okay. But I'm still trying to understand the relevance of that. Well, the relevance, Judge, is here's what happened. In Rule 29, the government charged with both having wallet and the money, and the government and the defendants moved – They didn't know he had a wallet either. They didn't know he had a wallet or money. Well, the – but the notice was given to, as part of the charging document, that they had a thing of value, and they specifically stated money and wallet is what they stated in the indictment. So I believe the government, by putting that notice, they're stuck with those things if they were to have it. Well, let's assume hypothetically that the indictment just said property, generic property. I mean, I understand your argument is, you know, they checked. There's no proof. It's the wallet. There's no proof. It's the money, et cetera. But let's say property. Couldn't a reasonable juror infer that when you go up and you say, what do you have, and you patch it down, that that was an attempt to steal some property? I think that would be correct, except then, at that point, I think you can ask for as a defendant, you would ask for specific unanimity instruction that all the jurors would have to agree to what that property would have been as part of – to get a unanimous verdict. Okay. So what's different about – you know, we have an indictment that says specific property, which we know the – that the victim had. And what's different about that from a hypothetical? I think they would get stuck. I think the government, if the evidence came out something different, I think they would get stuck, the way they alleged it. In fact, I think the government, in fact, tried to change it later and argue the exact same thing that you stated, Judge Thomas, that we don't have to prove anything of any particular object. We just have to give you proof of notice. And the defendants object to that instruction. So I can't be here arguing, saying, well, they should give specific unanimity instruction because it would be an invited error issue. So since the defendants disputed that, what the government essentially tried to correct would have been a proper jury instruction. But in this particular case, they noticed the property – the thing of value. They didn't say property. They said thing of value, specific to which a money and wallet. And defendant – and the victims did not have – the victims did not have a wallet. I mean, the victims did not have a wallet. They had a wallet, but no money. Correct. And with the Rule 20. And you couldn't attempt to steal something that somebody doesn't have? I'm not sure if you can commit that kind of type of crime. I couldn't find anything. Well, nobody has – yeah, but you haven't argued that you couldn't. I don't know why you can't attempt to – I mean, if you can conspire to steal something that doesn't exist, why can't you attempt to steal something that doesn't exist? I don't have an answer for you on that one. I think conspiracy is – I mean, I have a lot of disagreements. I think the Court has a lot of disagreements about how conspiracy is charged and how overused it is. But I think conspiracy is a different beast in itself, whereas this – if they charged us conspiracy, I think I'd be – I'd have a lot harder time arguing. Now, can I just back up for a minute? Did you say that you're not contesting the tobacco conviction? No. That's count one. We can't – we can't contest the tobacco conviction. Mr. Mitchell will be arguing count one. Yes. The tobacco issue was from a different victim, because clearly that was noticed in the indictment and that was what was taken. And in this particular case, during Rule 29 motion, you know, there was no evidence. It should have been granted, and the defendant would have never been even – the question should have never been even submitted to the jury. That's all the arguments I have. Okay. Very good. We'll give you some time for rebuttal. Mr. Mitchell? You're going to enlighten us on count one and other matters. Yes, Your Honor. May it please the Court. My name is Tyrell Mitchell. I represent Colbert Goldtooth in this matter. Judge, with respect to – Your Honors, with respect to these issues, a lot of Mr. – what Mr. Parks has covered, I won't go back over those two issues. But there was two issues, several issues with respect to Mr. Goldtooth I'd like to address with the Court. The first issue, judges, with respect to one of the officers testifying during trial, with respect that on previous occasions he had booked Mr. Goldtooth. Can I just clarify something? Are you – other than the evidentiary questions, are you contesting the tobacco count? Yes, Your Honor. Yes. We are contesting it. As to the – as a sufficiency issue. That's correct, Judge. And I think that was briefed, and I'll submit that along with the arguments. Well, he didn't make an argument on the tobacco count. I didn't. So if you want to make one, I think you're going to make one. And so we'll – and I'll get to it in terms of the Rule 106 and the completeness on that. If you like, I'll start to address that. But specifically in regards to the evidentiary issues with regards to Mr. Goldtooth, the issue came about with regards to an officer testifying that he had booked Mr. Goldtooth into custody on previous occasions. During that time, Judge, Your Honors, I – after his testimony, I moved forward mistrial to which the Court did not grant and gave a curative instructions. Your Honors, with respect to that issue, we believe that a motion for mistrial should have been granted as it relates to Mr. Goldtooth. So my experience, Judge, in terms of when specific issues such as this comes in and a jury understands or hears that there has either been previous contacts, bookings, or convictions without it being properly noticed by the government, it's just no way for a defendant to get a fair trial after this occurred, despite the fact that the district court gave a curative instructions with regards to this case. Ultimately, Judge, it puts you in a decision as to whether or not you ask the court to give it a curative instruction right then so the jury gets to hear it for a second time that he's been booked and that the jury should disregard it, or as to whether or not later on after you make your motion, you ask for the curative instructions. Ultimately, Your Honors, I decided to go ahead and have the curative instruction be given after this. So they get the curative instruction. That's the only mention. It's brief and no arguments made in closing about it. Why doesn't that sort of fall within the brief fleeting reference rule that excuses it from reversal? Your Honors, I know that it is presumed that the jurors will follow the instructions given by the district court judge. From a practical standpoint, in terms of an issue with respect to prior convictions or prior contacts with the police, it is one, at least in my belief, Judge, that just prejudices the client in that they hear he's had previous contacts before. I know the law is what it is, but I know that in terms of trying cases, it is one of the most that you guard against that issue most of all when you're trying cases. Sure. I accept your argument, but our case law seems to indicate that that's not structural error. That requires reversal. I mean, you have to look beyond the fact that the reference is made. And as a practical matter, I understand your point. Tell me how we get around how you think this is different from the other cases. Judge, I don't know necessarily it's necessarily different. In terms of, again, you know, trying cases, when you have a situation like this where that issue comes out, the bell is rung, the toothpaste is out the tube, you either address it or you hope that it just lies. I know the court, the judge, was asking with respect to, you know, there's nothing else in the record with regards to addressing that issue again. Well, there's just one or two ways. Either you're going to address it head on or you just end up letting it die and never address it again and hoping that the jury was able to follow the instructions. I don't believe they could. I don't believe – I think it's an issue that is inherently problematic for a defendant when other acts come out. So, again, are you making a sufficiency argument? I am, Your Honor. Okay. And let me move on to the Rule 106 with regards to the issue of the statements that was brought in. That's not a sufficiency argument. That's another question. I think she's asking you to get to your sufficiency argument first, if you don't mind going out of order of your presentation. With regards to the sufficiency argument of the – of both counts on the cigarette, Judge, it was our belief with regards to the evidence that was presented at trial  that it wasn't sufficient to meet the burden. Well, the tobacco wasn't given over. They went and took it. So that's not the argument. And I'm trying to figure out what is your sufficiency argument. Judge, we just don't believe that with regards to the evidence that was presented by the government that it was sufficient to find them guilty of it. You don't have a sufficiency argument. Yes, Your Honor. Well, without necessarily saying that, Judge, that's where we are. So you want to get to your other argument. Which I think is the strongest, and I probably would have started with that first. This is the issue with regards to the completeness with regards to the confession or lack thereof that my client gave to the agent. The government opened the door by asking the agent with regards to questions he had asked my client, Mr. Goldtooth, with regards to what happened that evening. They pick and choose. They cherry-pick the portions of that testimony in which to present to the jury, but not to present the ultimate question as it related to his denial of the cigarettes. Judge, ultimately with regards to whether it's inexplicably intertwined, Rule 106, those issues should have been allowed to hear my client's denial of taking any and all of that information or the cigarettes as it related to this case. When I attempted to ask after the government brought out and chose to bring out and open the door with regards to the questions that were asked during the interview and written down in the 302, I was denied that opportunity by the district court judge. We don't have a tape. Is that right? That's correct. We have a report. A written 302. Yeah, a police report, Your Honor. Okay. And how are these two statements linked together in that report? It's the same as kind of how it falls through. The questions are asked about what happened that evening. My client explains that he did come across the victim was having this conversation and asked for cigarettes. And that's the portion that comes out. The next question or thereof is his denial to say, hey, I didn't take those cigarettes from the victim. That is the portions that was not allowed to be introduced to give completeness with regards to, I guess, the full context of what was being said during the interview between the agent and my client. But again, to go back to the other problem, somebody took the actual tobacco aside from the cigarettes. That's correct, Your Honor. Now, I guess the problem with trying a case with co-defendants and as it being a conspiracy or other individuals, it's quite possible, I guess, that a jury could have found that there were other defendants, the other defendants took the tobacco. Although one co-defendant hung, and so that it would only have been Mr. Solcy, that would have been only the remaining defendant that could have taken the tobacco product. That being said, Judge, I believe that the government is making the argument ultimately that it is self-serving hearsay and shouldn't be admitted. Judge, my position with regards to that issue is, and I told the district court, Judge, I agree with that issue. I agree that it is self-serving. But all of the statements in context and how it could be used can be self-serving. The issue is whether or not the additional statement provides completeness within the context of what was being said. And I don't believe that Rule 106 and the, I think it's 801, precludes that from being brought in if, in fact, it brings context as to the completeness of the statements. Now, the government also says that Rule 106 doesn't apply because it has to, because that's confined to written documents. What's your response? Judge, within our brief, we signed a Seventh Circuit case as well as a district court of New Mexico with regards to that proposition. It was written down with regards to the statements that my client made, and I believe it falls within the purview of Rule 106 as the written portion of it. I believe there, and the government presented this to us a couple of days before, there was a Ninth Circuit case that came out with regards to addressing this particular issue. I believe it was Vallejos. And in that case, there was an issue with regards to an individual who was distributing child pornography and had given an audio statement with regards to that. But during trial was not allowed to give information at jail time, that he went to church, and there was another issue, I believe. I submit to the court that that issue is a lot different than our case in that I would submit in Vallejos that is out of the context of which 106, I believe, provides. It is an issue that, in terms of 106 and what we're essentially arguing, that it is needed. The statements are needed to provide a completeness as to the interview that was conducted by the officers of my client. Additionally, Your Honors, it's my position that although it may seem small, it is an issue of which we could have added additional defenses for Mr. Colbert in this case and ultimately judge it as our position that the court should grant our motion and grant us relief in this matter. Thank you. Thank you. We'll hear from the government. Thank you. Good morning. May it please the Court, Rachel Hernandez on behalf of the United States. In this case where the defendant surrounded the victim, the victims, while brandishing knives and a weighted baseball bat, asked them what they had on them, patted them down, announced their gang affiliation, and ultimately took the one thing of value that the victims possessed, there was more than sufficient evidence for a jury to convict. It's unclear to me, having heard the argument, whether there is still a dispute as to Count 1. I will just say briefly that in the briefing, Mr. Goldtooth contends that the fact that the victims had offered cigarettes meant that they were free to take the bag of tobacco. I don't think they – Well, who – what do we know about who took the bag of tobacco? It is a bit unclear from the record. However, it appears to be the person who held the bat, which appears to be Mr. Goldtooth. Okay. You're not trying to prove any particular defendant was responsible. You're proving their aims and endeavors. Is that correct? I'm terribly sorry, Your Honor. I couldn't make that whole question out. I'm sorry. I have to speak into a speakerphone and I hope I get through. As I understand your argument, you were not trying to prove that any particular defendant was the principal. You were trying to prove that they were aiding and abetting. That is correct, Your Honor. There was an aiding and abetting. And to do that, as I understand it, you have to prove they intentionally intended to commit the crime. The other person. It's not a general intent crime. The other person. Whichever is the other person. And if we don't know which is the other person. You have to prove a defendant intentionally intended to aid and abet. Is that correct?  Knowingly or intentionally. That is correct, Your Honor. Knowingly or intentionally. And when you don't know who the person was, how do you prove they were knowing and intentional? Well, you can prove that from the circumstantial evidence of the actions that they took surrounding. Are you aware that there was a case last week or so in the Supreme Court named Rosman v. United States about aiding and abetting? I am not aware of that, Your Honor. It seems to be fairly tough about what you have to prove in terms of intent. I apologize. I'm not familiar with that case. Do you believe that the argument you made in your brief at page 23, which you said overwhelmingly proved something, it seems to me, I'll be frank with you, it seems to me overwhelmingly proved that there was intimidation. But do we know for most that there was intimidation with intent to rob them of this tobacco? What is the evidence that they were intending to rob them of the tobacco? Well, the evidence that they were intending to rob them of the tobacco is the fact that they did, that they reached down and grabbed it out of the lap of. But only one of them did. See, that's the problem you've got. One of them did. We don't know which. If we know which one that one was, we could assume that he, it seems to me, that he intended to take it. But how can we assume the other guy intended for him to take it, whoever the other guy is? And since we don't know which is which, how have we proven the aiding and abetting with regard to each of them, because you don't know which one took them, right? Well, I believe the record indicates that Mr. Goldtooth was the one holding the bat, and the testimony was that the person holding the bat was the one who grabbed the bag of tobacco. He was also the one who nudged the victim in the back of the head with the bat. Are you changing your position? Are you arguing he's the principal? Are you changing your position? Are you arguing that Mr. Goldtooth was the principal? I don't believe I'm changing the position that we argued in the briefs, no. All right. Well, then you don't know Mr. Goldtooth. You don't know who it was. Is that correct? You do not know which was the principal, right? Will you respond, please? Yes, Your Honor. I would say that there is some evidence in the record that it was Mr. Goldtooth. I can't say with certainty standing here, no, I cannot. I believe there's some evidence that he's the one with the bat. All right. You have to prove aiding and abetting and knowing an intentional action by a defendant. And then the question is how do you prove that? Again, I point to the actions that they took when they surrounded the victims with their weapons and taking the tobacco. And if I may repeat myself, you certainly showed they surrounded them. You showed that surrounding, knowing unintentionally, was intended to get the tobacco. All right. Let me clarify that question a little bit. Are you familiar with the Supreme Court case that came down this month? That's the one I just mentioned. The Rose one. Right. Your Honor, I apologize. Judge Berzon just asked me about that, and I am not familiar with that case. Let me draw your attention. We may want to ask an extra briefing on this. I'll quote from the opinion. The intent must go to the specific and entire crime charge. What do you think? Your Honor, I would ask permission to provide additional briefing in light of that. I just want to draw this so you can think about it. That's on page 11. On page 13, for the reasons just given, we think that means knowledge at a time the accomplice can do something with it. Most notably, ought to walk away. Did the men have a chance to walk away before somebody grabbed the house? Did they have time to walk away? Yes. They had time to walk away. They all arrived in the car together. They walked up to the two victims who were sitting on the curb. They surrounded them. They said, what do you have on you? The victim said nothing. They patted down the front pockets. At that point, they took a hat off of one of the victim's heads, which they ultimately gave back. All they knew was the victim said nothing. So how did they have time to walk away? I missed the first part of that question. At that point, as far as I knew, there was nothing on the victim. So why was there any reason to walk away? There was nothing on the victim, so why was there any reason to walk away? Yeah. Well, they knew that they had something. They saw the bag of tobacco. The victim said they had nothing, but that doesn't mean that they actually had nothing. But the problem is you keep saying they, and that's the problem. And I just want to draw your attention to page 15 of the full opinion in Roslyn. Are you there? Page 15 of? Of Roslyn. The defendant makes no such choice when the knowledge comes too late for him to be reasonably able to act upon. In other words, if the other person, whoever the other person was, didn't know that the first person was going to take the tobacco and then he took it, then he didn't have a chance to walk away. Right. And, again, I have not read that case, and I would ask for permission to brief it. I guess I would say. What about the other count? Well, with regard to that count, there is circumstantial evidence of attempted robbery, again, pointing to. But it's not very strong. I mean, if they were really trying to find out what they had, wanted to take what they had in their pockets as opposed to knowing whether they had weapons, they would have, A, asked them, which they didn't, like, give me whatever's in your pockets, and, B, if they were patting down, I mean, any most people would know that the likely place to keep a wallet is not in your front pocket, it's in your back pocket. And they didn't do anything about a back pocket because, presumably, they were trying to find out about weapons. Well, that's certainly one inference. Of course, the jury rejected that inference. At the time that they patted them down, they had already asked the victims, what do you claim? What gang are you a part of? And they said, we're not a part of a gang. Right. That sounds like it's going more towards weapons than robberies. Go ahead. But at the point that they had said they're not in the gang, the likelihood that these people are armed diminishes. And so the fact that they then went on to pat their front pockets down, I'll admit, they should have done it. I mean, is it not ordinarily the case that you want to rob something, you say, give it to me? Sure. That is ordinarily how it's done. Ordinarily, people are more thorough than these people. Even if they were searching for weapons, a weapon could be in the back pocket. A knife could be in the back pocket. A gun could be in the back pocket. I mean, that's easily pulled out. So I'll submit I don't think they were very good at whatever they were trying to do. It does seem to me, quite aside from this money and wallet business, that it's hard to say that there's beyond or that a reasonable person could find beyond a reasonable doubt that they were trying to rob anything in the pocket. Well, I think the – I think that there is evidence of that when you take a look at the fact that, in fact, they did take the one thing of value that they found. So in – as to Victim 1, he was patted down. Well, it wasn't of much value. It wasn't of much value. It was obvious because they wanted the tobacco. Well, it wasn't of much value, but it's – it wasn't theirs to take. It wasn't offered to them. And they took it having been armed, having surrounded these people, having patted them down. And so we would submit that there are other inferences to be drawn, but the jury disregarded those. And at the stage of review, the court is required to presume that the jury resolved any conflicts in favor of the government. Additionally, as to whether – as to the jury instruction on wallet and money, the government can charge in the conjunctive and prove in the disjunctive. In this case, the court instructed mistakenly the jury as to wallet and money. So even if this Court were to find that the victim didn't have money on him, we know that the jury unanimously found wallet and money. But there was no money. I mean, that fact is clear from the record. There – the victim said he didn't recall if he had any. That is correct. He said he didn't have any. He – I don't dispute that he didn't have money in his wallet. But my point is – So where does that leave us? Because you pled money and wallet. And certainly you could have asked for the disjunctive, but the instruction was money and wallet. Well, I think it leaves us that we can excise money and wallet was still found unanimously by the jury, because in order for the jury to have returned a guilty verdict on count two, they necessarily had to find wallet and money. So even if this Court feels that they should not have been instructed on money based on the evidence, we can remove that and still have a unanimous verdict on a wallet, which there was evidence that he had. If somebody had gone up to them and said, give me your wallet and your money, and they didn't have any, is that an attempt to rob a wallet and money? Well, this – I'm not sure that there's any Ninth Circuit case law on that. There's a Fifth Circuit case, Dixon, which I cite in my brief, in which they said, give me your wallet. The person did not have a wallet. He had a checkbook. He said, I don't have a wallet, and that was upheld as attempted robbery. I think it probably is, and that's why I'm – but the problem here is they didn't ask for anything in particular. Well, I think there's circumstantial evidence that they did, patting somebody down, asking what do they have in their pocket. But does that change the answer to that question? In other words, the fact that they weren't asking for anything in particular, does that make it matter whether they actually had the particular thing that was charged? I would say in the facts of this case, it doesn't, because of their actions in intimidating, in trying to take something of force by patting down their pockets, I would say under the facts of this case, that doesn't change the analysis there. Well, let's say that he didn't even have a wallet on him. Where does that – where would that leave you in this case? I think the reasonable inference, again, from the circumstantial evidence here, is that they were trying to take something of value from the defendant. It's from the victims, rather. Well, suppose he had a ring in his pocket, but he didn't have a wallet or money. Right. The reason – robbers, the quintessential item that would be – Could you then be found guilty of attempting to take money in a wallet, or a wallet? I think that the inference is that robbers typically, quintessentially, are looking for something of value, usually money, and I think that's a fair inference. When you get further and further from something typically found on a person during an encounter like this, I think, you know, we move further and further away from Oh, I mean, it's not farfetched. That's just somebody would have a ring in their pocket or a, I don't know, you know, a A ring, a cell phone, I agree. A cell phone. At some point, at some point Well, suppose they had a cell phone, but they didn't have a wallet or money. Could they then be guilty of attempting to steal a wallet and money? I would say that that would be – I think you could. I think you could be charged with that. That's something that a person would typically have on them in the absence of any sort of demand for a certain item. I think that's possible. But when you – because we know that that is typically what a robber does, ask for money, is asking for a wallet. But he didn't ask for – I mean, that's where I – not only that, don't we get back to the adding and abetting problem at that point, in the sense, now, since neither of them actually – I mean, would you say that both of them had made an attempt to do this, even though neither of them specifically were shown to have an intent to take a money or a wallet, to go get back to the Rosamond problem? Right. And, again, I'm not familiar with that case. But I would say that – I mean, if all they intended to do was take something that was in the pocket of somebody and they had no idea what was in the pockets, is that good enough for adding and abetting? Well, again, I think it's a reasonable inference that a man has a wallet in his pocket. I mean, that's the typical thing that a robber would expect and would look for. Well, I mean, let's assume that you charged him with trying – you charged the defendants with trying to steal a gun, which might not be unreasonable if they're gang affiliation or carrying on the reservation. And he doesn't have a gun. Could you convict him? And, as I said, I think at some point the – you lose the reasonable inference. I think that when you pat somebody down, you ask them what they have on them. They're sitting outside a store. They're holding something that appears that they just purchased it. I think it's a reasonable inference to assume that they were trying to get his wallet and money. Beyond a reasonable doubt? I believe, based on the circumstantial evidence, yes. I mean, it's also a reasonable inference. I mean, I don't know if we're getting perhaps a little far afield, but maybe not, that if he would have found a gun, they would have taken it. So you – but you really can't charge him with trying to steal a gun he didn't have. It's tough to steal – say you charge him with stealing money he didn't have. And then you get to – you charge him with a wallet that they didn't know about and didn't take. Do you have a case, aside from the Seventh Circuit one, that comes close to this? No, Your Honor. Do you have any case in which somebody was convicted of robbing something that they didn't know about and didn't ask for? They didn't specify it, and they didn't know about it. I don't have a case that says that. Moving on to the arguments raised by Mr. Goldtooth here, the motion for mistrial was properly denied. A curative instruction was given. It was a fleeting comment. And as was discussed, the jury is presumed to follow the instructions given. The defendant cites the Bland case in his brief, and this is distinguishable from that case in that – in that case, the judge said the defendant was a suspected murderer and a child molester. Here, in a case where the jury has already heard that the defendant possessed a weapon, that he was a gang member, that he had intimidated these victims and that they were scared, to hear one fleeting comment that he had been booked previously is not something that cannot be cured by a curative instruction. On to the issue of self-certainty. You know, it is pretty damaging in the reality of the courtroom, though, to say, yeah, he's been – we've arrested him before, when you're talking about basically credibility assessments. Well, that he's been booked before is not as damaging, for instance, as he's been arrested before or he – I mean, that he's been convicted before, excuse me, or that he has been convicted of certain types of crimes or anything like that. Even in the Marsh case, this court held where an attorney commented on the defendant's silence, that that could be cured by a curative instruction, that the fact that there was substantial, independent, credible evidence of guilt overwhelmed that comment. Okay. Why don't you turn to the one – the Rule 106 issue? Thank you. In that situation, the statements that the defendant sought to introduce were self-serving hearsay. Nothing about Rule 106 trumps the hearsay rules. In the cases that I cited in my brief, in addition to the Vallejo's case, which was just from a few weeks ago, Rule 106 applies when it is – when the complete statement is necessary to avoid a misleading impression. The statements that were admitted and the statement that the defendant sought to admit, there's no misleading occurring without that statement. Their jury is not left with the impression, having heard the statements from the detective, the jury is not left with an impression one way or another whether he got the cigarettes. If they were, I would agree that the statement that he said he didn't get anything would be necessary. But they're not left with that misleading impression at all. Furthermore, as the Court noted, this wasn't a written statement. This wasn't a recorded statement. And I'm not even sure that Rule 106 would apply in that situation. But even assuming that it does, just the self-serving hearsay nature of the statement that they sought to introduce was properly excluded. Okay. Any further questions? I would like to say something to the government court here. This goes a little bit beyond the guilt or innocence, but it's the discretion of the government to prosecute a crime of robbery of $3 worth of tobacco. Now, probably you did not make that decision. And you've come up here like a good soldier to defend what the government did. And I see you've been a member of the VA for almost 20 years. But if you were exercising your own discretion, would you try to get somebody sent to prison for nine years at that time? Is the question would I have charged the case? Yes. Your Honor, I have not. You have not thought about it. I have not read all. I was not presented with every report and sit in the shoes of the person who charged it. I think that it meets the elements of the crime of robbery and attempted robbery. Well, I mean, to follow up, because I was troubled as well, it appeared to me that what was really going on here was that they thought these people had done something else quite terrible, because there was noise about one of them had blood on their hands, so there was something about they thought that these were weapons in a murder. And so there's a real strong sense that this is all a stand-in for something else, which is not necessarily the way to proceed. Well, Your Honor, the victims in this case immediately after this happened went in and told the store. And then said they didn't want to prosecute. No, I don't. My understanding is that that's what they said. I believe that they went in and told the store owner or the worker, the clerk, what had happened. Later, they saw these defendants with the police and they went over and said, these are the guys who robbed us earlier. And they said that we don't want to press charges. Because they were scared. And then the police officer testified that they were scared, that they appeared apprehensive, that they kept looking behind them and feared retribution. So while it is true that these people are suspected of a murder, these weapons were suspected of being used in a murder occurring that same night, it is also true that two people were victimized by the actions of these defendants. They felt intimidated. They felt threatened. And they had their personal property removed from them. And so that is a fair charge under the statute prohibiting robbery. Thank you, counsel. Thank you. And we will give you three minutes cumulatively for rebuttal if you want to take it. I don't have any rebuttal, Judge. Judge, just briefly. All right. Two issues in terms of addressing the government's comments. One, during trial, it was unclear as to who had the bat and who necessarily had the knife and who identified whom having whatever. And that was not necessarily clear. And you throw in the fact that Gage Goldsruth received a mistrial with regards to all of his cases. It does raise an issue as to, I guess, the sufficiency of the evidence. Well, did the jury – was the jury told that it had to find who did it and who was the aider and abettor? They did not, Your Honor. They were not necessarily told. And I am. Should they have been? I mean, you didn't raise this issue. I didn't. And the only issue, when I've heard the court talk about this new case, and I would like an opportunity at least to review that and actually apply additional briefing with respect to that issue. Thank you, Your Honor. Very good. The case just argued will be submitted.
judges: Noonan, Thomas, Berzon